IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KIMBERLY K.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:23-cv-00408-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

Plaintiff Kimberly K. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and REMANDED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I.    **Plaintiff's Application**

Plaintiff alleges disability based on asthma, an intellectual disability, small fiber neuropathy, vision issues, leg paralysis, use of a cane and a walker, and depression. Tr. 143.[2] At

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

the time of her alleged onset date, she was 47 years old. *Id*. She has completed high school and

can no longer perform her past relevant work as a housekeeper cleaner, and a housekeeper

cleaner/cafeteria attendant. Tr. 86.

Plaintiff protectively applied for DIB and SSI on June 1, 2020, alleging an onset date of

January 14, 2018. Tr. 143-44, 159-60. Her applications were denied initially on September 2,

2020, and on reconsideration on April 13, 2021. Tr. 157-58, 173, 202-03, 227-28. Plaintiff

subsequently requested a hearing, which was held on February 15, 2022, before Administrative

Law Judge ("ALJ") Henry Kramzyk. Tr. 102. Prior to the hearing, plaintiff amended her alleged

onset date to January 31, 2020. Tr. 405. Plaintiff appeared and testified at the hearing,

represented by counsel. Tr. 102-42. A vocational expert ("VE"), Chad Kollars, also testified. Tr.

134-42. On March 14, 2022, the ALJ issued a decision denying plaintiff's claim. Tr. 88. Plaintiff

requested the Appeals Council review ALJ Kramzyk's decision, which was denied on January

31, 2023. Tr. 1-7. Plaintiff then sought review before this Court.

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 31, 2020, the amended alleged onset date. Tr. 72.

At step two, the ALJ determined that plaintiff has the following severe impairments: "peripheral neuropathy, asthma, obesity, depression, anxiety, and intellectual disorder." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 73. The ALJ then resolved that plaintiff had the RFC to perform light work with the following limitations:

> [S]he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an eight-hour workday and stand and/or walk for 6 hours in an eight-hour workday. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop. She can never crouch, kneel, and crawl. She is able to understand, remember and carry out short, routine and repetitive instructions. She is able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, routine repetitive instructions. She can use judgment in making work decisions related to short, routine repetitive instructions. [She] requires an occupation with only occasional co-worker contact and supervision. She requires an occupation with set routine, procedures and instructions, and occasional changes during the workday. She requires an occupation with only occasional contact with the public. She can do work with no requirement to meet defined production quotas, such as production line work. She can maintain regular attendance and be punctual within customary tolerances. She can perform activities within a schedule. She must avoid concentrated exposure to extreme cold and extreme heat. She must avoid concentrated exposure to fumes, odors, dusts, gases, and pulmonary irritants. She must avoid concentration exposure to vibration. She must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.

Tr. 77.

At step four, the ALJ found that plaintiff could no longer perform her past relevant work as a housekeeper cleaner and housekeeper cleaner/cafeteria attendant. Tr. 85-86. At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a hand bander, paper pattern folder, and ironer. Tr. 87. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 88.

**DISCUSSION**

Plaintiff argues that the ALJ committed three errors: (1) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinions of Jeremy Lanford, M.D., Kiley Gilbert, PMHNP, Michael Conner, Psy. D., and William Trueblood, M.D.; and (3) improperly rejecting the lay witness testimonies of plaintiff's mother, three acquaintances, and a services coordinator.

## I.    Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject her symptom testimony. Pl.'s Br. 13-15. This Court finds that the ALJ's rejection of plaintiff's testimony concerning her medical conditions was supported by substantial evidence, but that the ALJ's finding as to her mental health conditions was not.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that

they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

Plaintiff reported that she could not work on a regular, full-time basis because of a neuropathy in her left leg, numbness she experiences in both legs and feet, an inability to control her eyelids at times, asthma, and pain in her legs, feet, and right lower back. Tr. 120-22. She testified that she is taking medication for her pain, two inhalers for her asthma, sleeping pills, and some medication for depression. Tr. 122. She further testified that she experiences coughing as a side effect of her inhalers and blurred vision as a side effect of her pain medication. Tr. 122-23. She has not undergone any other kinds of treatment, like physical therapy, for her physical impairments. Tr. 123. When asked about her physical capabilities, she testified that she could lift and carry a gallon of milk, walk for 30 minutes, stand for 15 minutes, sit for 30 minutes, and that she can use her arms and hands. Tr. 123-24. As for her daily activities, plaintiff testified that she has her caregiver help with vacuuming and dusting, laundry, and shopping. Tr. 124. She also

clarified that she does not need help taking care of her personal hygiene, getting dressed, or taking care of her finances, and that she drives. Tr. 124-26.

When asked to elaborate on the numbness plaintiff experiences, she explained that her legs will freeze, as if paralyzed, and she will be unable to move for up to three hours. Tr. 128. She further explained that these episodes are brought on by sitting or standing for too long but did not elaborate on how long. *Id*. She stated that the leg paralysis happens two or three times a month. Tr. 129. She then explained that her inability to open her eyes happens twice a day, once in the morning and once at night, and lasts for approximately 30 minutes. *Id*. When asked to elaborate on her reason for needing a caregiver, plaintiff testified that she needs the caregiver because it takes her a longer time to do ordinary tasks, such as cleaning, because she needs more breaks. Tr. 131-32. She then testified that she uses a cane because she has balance issues that cause her to fall at least once a month. Tr. 132-33. As for her sleep quality, she stated that she only gets two to three hours a night because of her pain, and that she must take three-hour naps during the day. Tr. 133. When asked about her memory and concentration, she testified that he has to have reminders of her appointments even when she writes them down, and that she will go somewhere to do a task but forget why she is there. Tr. 134.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 78. The ALJ reasoned that plaintiff's testimony concerning her physical limitations was inconsistent with

her conservative treatment and the objective medical evidence. Tr. 73, 81.[3] The ALJ found that Plaintiff's testimony concerning her mental limitations was inconsistent with evidence of her daily activities, as well as her conservative medical treatment and evidence from the medical record. *Id*.

### C.    Daily Activities

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Plaintiff stated that she was unable to sit, stand, or walk for any significant length of time due to pain and numbness in her legs, and that she had trouble with her memory, insofar as needing reminders even after writing things down. She also stated that she has a caregiver that vacuums and dusts and takes care of the laundry because she physically cannot do these tasks. Tr. 123-24, 134. In discounting plaintiff's testimony because of her daily activities, the ALJ cited plaintiff's ability to do some chores, independently shower and dress, pay bills online, drive, that she took a vacation in 2021, that she is able to use a smartphone, use the internet, use social media, and gets along with her family. Tr. 81. Plaintiff argues that her ability to perform these activities does not undermine her testimony. The Court agrees.

Plaintiff testified that she does not vacuum or dust, that her caregiver cleans the bathroom and floors, that she has help from her caregiver when she does the laundry, that she goes grocery

---

[3] The Commissioner asserts that "[t]he ALJ did not cite Plaintiff's activity level as being inconsistent with her physical complaints, only her mental complaints." Def.'s Br. 7 n. 5. Accordingly, this Court only addresses Plaintiff's activity level with respect to her mental conditions.

shopping with her caregiver, and what chores she can do, she does only "a little." Tr. 124, 131. Plaintiff did testify that she took a vacation in 2021, but there was no elaboration of any actual activities that took place there, making this an inappropriate line of reasoning on which the ALJ relied. Tr. 125. It is unclear how these activities meet the threshold for transferrable work skills or how they contradict plaintiff's testimony. A plaintiff cannot be penalized for trying to live some semblance of a normal life, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Tellingly, the ALJ does not elaborate on what activities contradict plaintiff's testimony regarding either her physical or mental impairments. Given that plaintiff requires help in order to effectuate any household activities outside of her personal hygiene, and that she took a vacation with her parents in their motorhome, no reasonable inference that plaintiff is somehow physically more capable than alleged can be drawn. Furthermore, none of these activities has any bearing on plaintiff's mental health condition, and the mere fact that plaintiff is capable of using a smartphone, the internet, and social media, without more, neither contradicts plaintiff's testimony nor establishes that she is somehow more capable than alleged.

In sum, because the ALJ did not connect those activities to any symptom or the degree of any symptom alleged by plaintiff, he cannot rely on Plaintiff's activity level to discount her testimony regarding her mental health limitations. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be

consistent with doing more than merely resting in bed all day."). Accordingly, Plaintiff's activity

level does not provide a clear and convincing reason for rejecting Plaintiff's testimony.

####    D.    Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by

evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record

is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as

undercutting such testimony."). While an ALJ may also consider the lack of corroborating

objective medical evidence as one factor in "determining the severity of the claimant's pain,"

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain

testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006);

*see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective

symptom testimony superfluous by demanding positive objective medical evidence 'fully

corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498

(quoting *Burch*, 400 F.3rd at 681)).

####    i.    Physical symptoms.

The ALJ concluded that plaintiff's testimony regarding her weakness in her lower

extremities was contradicted by medical records showing that her neuropathy was not as severe

as alleged, and by testing results showing that her reported limitations did not exist. Tr. 80-81.

As support for this conclusion, the ALJ pointed to records showing that in May 2020, five

months after her alleged onset date, that her pain was only moderate, the back pain was new, that

her complaints of weakness were volitional and functional with no known cause and no

neurological concerns on exam, her falls were rare, and her gabapentin was improving her pain.

Tr. 977. On testing, she had full motor strength, reflexes, and senses, with only a slight reduction

in temperature in her lower extremities, an absent Rhomberg test, and she was able to tandem

walk. Tr. 978. In August 2020, she complained of full body paralysis rather than just her legs,

but otherwise her condition had not changed, with it being noted once again that her episodic

paralysis was more than likely volitional since it was without clear cause, and her gabapentin

was increased. Tr. 989. In November 2020, she was evaluated again for her weakness, notably

she no longer complained of full body paralysis, but the weakness was still present in her legs.

Tr. 1100. Her gabapentin was again increased, and it was noted that while her weakness was due

to a functional disorder, there were "no concerns regarding these episodes." *Id*. In February

2021, records remained the same as they were in November 2020, except that her gabapentin

further improved her pain and neurological evaluation revealed no issues related to leg weakness.

Tr. 1097. More testing was done throughout 2021, from July to October, all of which repeated

her previous results, with the addition of results showing she had no gait or balance issues. *See*

Tr. 1172-73, 1169, 1195, 1332-33.

Based on the record before the Court, the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony about

her physical limitations based on contradictory medical evidence. The ALJ's citation to these

objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. This objective evidence is

therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

ii.     Mental symptoms.

As for her mental health, plaintiff testified that she has issues with her memory and concentration, such that she needs reminders and will sometimes forget what she is attempting to do. Tr. 133. According to plaintiff's function reports from July 1, 2020, she sometimes needs reminders to take her medication, she cannot pay bills, count change, handle a savings account, use a checkbook, has difficulty with anything math related, and suffers from memory loss and loss of focus. Tr. 471, 473-74. She is able to pay attention for up to one hour, usually finishes what she starts, including chores, reading, and watching movies, and can follow written and spoken instructions as well as get along with authority figures. Tr. 474. Plaintiff's function report from July 13, 2020, shows that plaintiff sometimes needs reminders to brush her teeth, that she is able to pay bills but not count change, handle a savings account, or use a checkbook, and that she enjoys working on puzzles and reading, and that changes in routine do not bother her much. Tr. 502, 504, 507-08. In an updated function report from February 19, 2021, plaintiff stated she has difficulty focusing and spelling, has poor memory which causes her to misplace things, has difficulty learning things, and she is easily distracted. Tr. 535. She also stated she continues doing puzzles and reading, that she can only pay attention for 10-15 minutes, that she gets easily distracted, that she has to read written instructions a few times, and that she needs spoken instructions repeated as well. Tr. 536, 540.

The ALJ concluded that plaintiff's testimony was inconsistent with the medical evidence because of mental status examination findings. Tr. 80. As support for his conclusion, the ALJ pointed to a psychological examination from January 2019, where plaintiff had a full-scale IQ of

72, leading to a diagnosis of mild intellectual disability. Tr. 1155-63. Despite her low IQ, she

was able to maintain attention throughout the testing, her statements were relevant, coherent,

logical, and goal directed. Tr. 1157. In June 2020, she reported being depressed and anxious but

also that she was improving through a combination of behavioral changes and Celexa. Tr. 1037.

A report from August 2020 was much the same, with normal thought content, goal-directed

thought processes, fair judgment, and limited insight. Tr. 1023.

A year later, in August 2021, plaintiff underwent a second psychological evaluation in

which she had a full-scale IQ score of 69, again reflecting a mild intellectual disability. Tr. 1172.

In September 2021, plaintiff again displayed normal thought content and goal-directed thought

processes with fair judgment and limited insight. Tr. 1231. In October 2021, she displayed fair

insight and judgment though had slowed speech and lower than average intelligence. Tr. 1338. In

a summary of treatment report from October 2021, plaintiff had impaired speech such that she

was asked to speak up and repeat herself, her intelligence was in the below average to average

range, her short-and-long-term memory were seemingly intact, she had an average to above

average fund of knowledge, and some impairment of her executive functioning such that she had

some difficulty walking. Tr. 1234. In January 2022, plaintiff reported her mood was stable

overall, that she had some anxiety, and that panic symptoms were rarely experienced. Tr. 1248.

Here, the ALJ failed to connect how Plaintiff's mental status reports or other objective

medical evidence *contradict* her testimony concerning her memory, concentration, and ability to

function. The ALJ gives a cursory review of her treatment, rarely mentioning what affect her

treatment is having or how and why she is undergoing treatment. Further, all objective medical

evidence cited by the ALJ demonstrates that Plaintiff had mental limitations, including a mild

intellectual disability and issues with her speech, insight, and judgment. To be sure, the mental

status reports and objective medical evidence cited by the ALJ does not fully corroborate
Plaintiff's testimony concerning her mental limitations, but such corroboration is not required.
*Smartt*, 53 F.4th at 498. Accordingly, the ALJ's rejection of Plaintiff's subjective symptom
testimony as inconsistent with the objective medical evidence was not supported by substantial
evidence.

### E.    Conservative treatment

"[I]n order to get benefits, an individual must follow treatment prescribed by his or her
physician if the treatment can restore the ability to work, unless the individual has an acceptable
reason for failing to follow the prescribed treatment." *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th
Cir. 2007). An ALJ may reject a claimant's testimony when the severity of symptoms alleged is
inconsistent with the level or frequency of treatment. *See Molina*, 674 F.3d at 1113 (quoting
Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *7 (July 2, 1996); *Burch v.
Barnhart*, 400 F.3d 1111, 1114 (9th Cir. 2005)). In some instances, use of conservative treatment
such as over-the-counter medication is "sufficient to discount a claimant's testimony regarding
severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

i.    <u>Mental limitations</u>.

With respect to Plaintiff's mental health limitations, the ALJ found that "treatment for the
claimant's condition has been conservative in nature. There is no indication that she has required
aggressive medical intervention to manage her mentally based symptoms." Tr. 75. He also found
that "[t]he record does not contain evidence of any inpatient hospitalizations for her mental
condition." Tr. 81. These conclusory statements regarding the conservative nature of the
treatment are insufficient. To begin with, the "lack of inpatient medical care does not render
claimant's mental health treatment 'conservative.'" *Scott H. v. Comm'r, Soc. Sec. Admin.*, 2023

WL 4249276, *4 (D. Or. June 29, 2023). The ALJ also failed to cite to any other treatment that would have been available for Plaintiff's mental health conditions. The record does not reflect what additional treatment for Plaintiff's mental limitations was available, much less treatment that Plaintiff failed to follow and that would have restored her ability to work. As such, the ALJ's reliance on conservative treatment to reject Plaintiff's symptom testimony was not supported by substantial evidence.

        ii.    <u>Physical limitations</u>.

    With respect to Plaintiff's physical limitations, the ALJ concluded that "her treatment has been conservative in nature. The claimant is treated with medications and in October 2021 she reported some improvement with medications." Tr. 79. The ALJ also found that Plaintiff's "treatment records showed that providers offered at most conservative treatment, the treatment offered was generally effective, and providers never opined that they caused the claimant any specific work related functional limitations." Tr. 73. Unlike with respect to Plaintiff's mental health conditions, here, the ALJ specifically references the treatment modalities provided to Plaintiff and records demonstrating that conservative treatment was generally effective. Thus, the ALJ provided sufficient support for his rejection of plaintiff's subjective symptom testimony based on her conservative treatment.

    **F.    Conclusion**

    In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony as to her physical conditions as inconsistent with her conservative treatment and the objective medical evidence. On the other hand, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting her subjective symptom testimony as to her mental limitations as inconsistent with

evidence of her daily activities, her conservative medical treatment and the objective medical evidence.

## II.    Medical Opinions

Plaintiff alleges that the ALJ's rejection of the opinions of by Dr. Lanford, Dr. Trueblood, and Kiley Gilbert, PMHNP, as inconsistent and unsupported was not supported by substantial evidence. Pl.'s Br. 6-13.[4] This Court finds that the ALJ's rejection of Dr. Lanford's testimony was supported by substantial evidence, but the rejections of Dr. Trueblood and Gilbert's opinions were not.

### A.    Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is

---

[4] Plaintiff also argues that Dr. Conner's opinion was not inconsistent with the medical evidence. Pl. Brief 11. The ALJ did not reject Dr. Conner's opinion, so this Court does not consider Plaintiff's arguments concerning Dr. Conner to be a separate assignment of error.

determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B.    Dr. Jeremy Lanford

Plaintiff first argues that the ALJ improperly evaluated Dr. Lanford's opinion by equating plaintiff's neuropathy and conversion disorder as a single diagnosis rather than two separate issues. Pl.'s Br. 6-7. Plaintiff also argues that Dr. Lanford's assessed absenteeism and need for frequent breaks were not properly addressed. Pl.'s Br. 7. The ALJ found that Dr. Lanford's opinion was unpersuasive because it lacked adequate support and was inconsistent with the evidence of record. Tr. 83. The ALJ found that Dr. Lanford failed to provide any testing or

examination records to support his findings and that although plaintiff reported lower extremity weakness such that she could not move her legs, Dr. Lanford found that plaintiff had no issues on neurological examination, that her gait was normal with no weakness or sensory deficits, and that she displayed normal motor strength and reflexes while also reporting she rarely falls. Tr. 83 (citing Tr. 1097, 1100, 1169, 1332).

Dr. Lanford submitted a medical opinion in which he noted that plaintiff's sensory symptoms are due to an idiopathic small fiber neuropathy because no cause had been identified. Tr. 1321. He also noted that plaintiff's episodes of weakness were due to a functional neurological disorder, equating it to a conversion disorder over which plaintiff has no control or suggestive of malingering. *Id*. Last, Dr. Lanford opined that the frequency of plaintiff's leg weakness and her neuropathy, which was responsible for her pain, would lead to plaintiff being absent "many more than 2 days a month and [require] frequent breaks." *Id*.

The ALJ found the assessed limitations regarding plaintiff's absenteeism, and the opinion as a whole, unpersuasive because it was unsupported by the medical evidence. Tr. 83. Plaintiff argues that this finding was not supported by substantial evidence because Dr. Lanford's findings were supported by objective testing. Pl. Br. 7. This Court disagrees.

Dr. Lanford's own notes from November 2020 and February 2021 showed that even though he believed plaintiff suffered from a functional disorder that caused her weakness, he specifically noted that this condition was of "no concern." Tr. 1097, 1100. And although Dr. Lanford noted that plaintiff's pain was a contributing factor in her absenteeism and need for breaks, he opined that her pain was only moderate, that her pain improved with treatment, that she has no weakness in her lower extremities, no hand symptoms, and that she has full motor strength, reflexes, sensory, coordination, and normal gait. Tr. 1097, 1100-01. In October 2021,

Dr. Lanford once again noted that he had "no concerns" regarding plaintiff's weakness, that her pain was being adequately treated by the same medication from February, and that her test results were grossly normal. Tr. 1332-33.

Given that plaintiff displayed normal strength, sensation, reflexes, and gait in her lower extremities, that her pain was adequately managed by medication, and that plaintiff's episodes of weakness due to a possible conversion disorder were described as being of "no concern," the ALJ concluded that Dr. Lanford's opinion regarding Plaintiff's inability to work lacked adequate support and was not supported by substantial evidence. Tr. 83. To be sure, the evidence cited by Plaintiff could have supported a different conclusion. But this Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 679. Accordingly, the ALJ's rejection of Dr. Lanford's opinion is supported by substantial evidence.

### C.    Kiley Gilbert, PMHNP

Gilbert provided a mental residual functional capacity assessment on February 8, 2022. Tr. 1322-26. She noted that she began seeing plaintiff on December 2, 2021, saw her monthly, and that her last appointment was February 3, 2022, indicating she only saw plaintiff three times. Tr. 1322. She noted that plaintiff's diagnosis was persistent depressive disorder, that her condition responded fairly well to medication, that she had no knowledge of plaintiff's other medical records, and that she believed plaintiff's possible brain damage contributed to her mental health condition. *Id*.

In the category of understanding and memory, Gilbert provided that plaintiff has a marked limitation in her ability to remember locations and work-like procedures and an extreme limitation in her ability to understand and remember detailed instructions. Tr. 1323. In sustained

concentration and persistence, Gilbert opined that plaintiff has marked limitations in the ability to carry out detailed instructions, ability to perform activities within a schedule, maintain regular attendance and be punctual, and the ability to sustain an ordinary routine without special supervision. Tr. 1323-24. In that same category, plaintiff had extreme limitations in the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday or workweek without interruption from her symptoms. Tr. 1323-24. In the category of social interaction, plaintiff had moderate limitations across the board, but neither marked nor extreme limitations. Tr. 1324. In the category of adaptation, plaintiff had marked limitations in her ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, the ability to set realistic goals or make plans independently of others, and the ability to tolerate normal levels of stress. Tr. 1324-25. There were no extreme limitations in that category. Lastly, Gilbert opined that plaintiff would be off-task at least 20 percent of a normal workday, that plaintiff would miss two days of work per month due to her symptoms, and that plaintiff could manage her own funds. Tr. 1325.

The ALJ found Gilbert's opinion unpersuasive because it was based on only three visits with the plaintiff, plaintiff's daily activities were inconsistent with Gilbert's opinion, the opinion was inconsistent with Gilbert's own records as well as other medical evidence of record. Tr. 83. Plaintiff argues that the ALJ improperly discounted Gilbert's opinion based on limited time with the plaintiff which relies on old regulations that no longer apply, that the ALJ improperly relied on plaintiff's activities of daily living to discount Gilbert's opinion, and that the ALJ failed to address Gilbert's opinion that plaintiff would be unable to work due to being off task and absent.

Pl. Br. 8. The Court agrees with Plaintiff on some of these grounds and concludes that the ALJ's rejection of Gilbert's opinion was not supported by substantial evidence.[5]

Plaintiff argues that limited time spent with the plaintiff is not a valid reason to discount Gilbert's testimony because it relies on prior, inapplicable regulations. Plaintiff, however, is incorrect. The current regulations clearly state that an ALJ is to consider, but is not required to elaborate on, a medical providers relationship with the plaintiff, which includes both length of time treated and frequency of examinations. *See* 20 C.F.R. §§ 404.1520c(c)(3)(i), (ii), 416.920c(c)(3)(i), (ii). Therefore, it is not only not improper for an ALJ to take length of treatment into account, the ALJ is required to do so.

As to the ALJ's rejection of Gilbert's opinion based on Plaintiff's activities of daily living, the Court agrees with plaintiff, though not for the reason plaintiff asserts.[6] While plaintiff has a caregiver help her with her chores and household responsibilities, it is the daily activities themselves that do not provide support for the ALJ's conclusion. As discussed above, plaintiff's

---

[5] Though not specifically addressed by Plaintiff, the ALJ also appears to have rejected Gilbert's opinion based in part on the "checklist-style" form used. Tr. 84. An ALJ may discount a medical opinion provided in this way when there is no narrative explanation for its conclusions. *See* Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020) (holding that a medical opinion in check-the-box form can only be rejected when the questionnaire does not contain any explanation for its conclusions). Gilbert provided an explanation under a question asking if plaintiff can work on a regular sustained basis in light of her mental impairment, stating "[w]ith the medical issues and brain damage along with the mental health symptoms it would be difficult for her to sustain consistent work at this time. She would need frequent breaks and supervision to help with staying on task as she struggles with memory and executive functioning." Tr. 1325. While Gilbert does not provide any other narrative explanations, this explanation does provide a basis for Gilbert's opinion that would not allow the ALJ to reject it entirely on this basis.

[6] Plaintiff argues that her daily activities do not provide a sufficient basis to discount Gilbert's opinion because plaintiff has a paid caregiver that helps take care of her activities of daily living, and that the caregiver is being provided because of plaintiff's intellectual disability. While it would have been appropriate for the ALJ to discuss the role of Plaintiff's caregiver when considering her activities of daily living, the failure to do so does not automatically render the decision unsupported by substantial evidence.

ability to perform such activities as personal hygiene, drive, pay bills online, use a smartphone, the internet, and social media do not form a sufficient basis for discounting a medical opinion regarding plaintiff's mental health without sufficient reasoning. Furthermore, a vacation taken in 2021 with her parents, in their motorhome, cannot serve as a valid basis for rejection, especially when there is no indication of any activity taking place that would undermine the mental health assessment or plaintiff's underlying testimony. The ALJ failed to explain how these activities were inconsistent with the limitations described by Gilbert. Accordingly, the ALJ's rejection of Gilbert's opinion as inconsistent with plaintiff's activities of daily living was not supported by substantial evidence.

Finally, the ALJ failed to provide adequate support for his conclusion that Gilbert's opinion was inconsistent with other medical evidence. The ALJ relied on reports from September and October 2021, showing that plaintiff had fair judgment, was cooperative and alert, had normal thought content, goal directed thought processes, average to below average intelligence, intact short-and-long-term memory, and average to above average fund of knowledge. Tr. 1231, 1233. However, these findings are not inconsistent with Gilbert's finding that plaintiff would be off task, as they only tangentially relate to plaintiff's ability to concentrate, persist, or maintain pace. The ALJ also relied on one of Gilbert's own medical records from January 2022, noting that plaintiff reported feeling stable, rarely had panic symptoms, had a brighter mood, and reported her mood was "ok." Tr. 1248-49. The ALJ cannot reject an examining medical professional's opinion as inconsistent without providing an explanation for that decision. *See Woods*, 32 F.4th at 792.

In sum, because it is not clear from the ALJ's opinion how Gilbert's assessment is inconsistent with plaintiff's activities of daily living or the medical record, the ALJ's rejection of Gilbert's medical opinion was not supported by substantial evidence.

### D.    Dr. William Trueblood

Dr. Trueblood provided a mental residual functional capacity assessment on August 20, 2021. Tr. 1180-84. In the assessment, Dr. Trueblood noted that her neurocognitive status was unlikely to change, that the cause of her intellectual impairment may relate back to a brain injury she received as an infant, and that plaintiff has never received any type of treatment for her neurocognitive/intellectual condition. Tr. 1180. Dr. Trueblood opined that plaintiff would have marked limitations in her ability to understand and remember detailed instructions, in her ability to carry out detailed instructions, in her ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without getting distracted, and in her ability to complete a normal workday or workweek and perform at a consistent pace without interruption from her symptoms. Tr. 1181-82. He further opined that she would have marked limitations in her ability to respond appropriately to changes in a work setting, in her ability to be aware of normal hazards and take appropriate precautions, in her ability to travel to unfamiliar places or use public transportation, and in her ability to tolerate normal levels of stress. Tr. 1182-83. He also assessed an extreme limitation in her ability to set realistic goals or make plans independently of others. Tr. 1183. Notably, he did no testing in the category of social interaction. Tr. 1182. Lastly, Dr. Trueblood noted that plaintiff would be unable to sustain work at least 20 percent of the time, that her intellectual disability would not cause absenteeism, and that she cannot manage her own funds, though he did not explain why. Tr. 1183.

The ALJ found Dr. Trueblood's opinion unpersuasive because it was based on a "one-time evaluation" and "not on long term treatment." Tr. 84. The ALJ also discounted Dr. Trueblood's opinion because it was unsupported and inconsistent with other mental health records, lacked reasoning for why plaintiff would be off-task at least 20 percent of the time, was inconsistent with plaintiff's activities of daily living, and contained marked limitations despite plaintiff only having a mild intellectual disability. *Id*. Plaintiff argues that reliance on a one-time evaluation is inconsistent with current regulations, that Dr. Trueblood's finding related to plaintiff being off task was supported by testing, that plaintiff's activities of daily living are not a proper basis for discounting the medical opinion because plaintiff has a caregiver, and that the ALJ provided no reasoning as to why a mild intellectual disability cannot result in marked limitations. Pl.'s Br. 10-12. As discussed below, the ALJ's rejection of Dr. Trueblood's opinion was not supported by substantial evidence.

On plaintiff's first point, that Dr. Trueblood's opinion was improperly discounted because it relied on a one-time evaluation, the Commissioner concedes that Dr. Trueblood evaluated plaintiff twice. *See* Def.'s Br. 20. Although plaintiff was correct that Dr. Trueblood evaluated plaintiff twice, plaintiff's argument regarding the ALJ's rejection based on limited time with plaintiff is improper for reasons set forth above. Therefore, it would not ordinarily have been improper for the ALJ to take this into account when discounting a medical opinion. It was, however, improper in this case because Dr. Trueblood provided the equivalent of a consultative examination, which are by their nature generally one-time evaluations.

The ALJ also discounted Dr. Trueblood's opinion because plaintiff's intellectual disability was mild, but Dr. Trueblood found "many marked limitations." Tr. 84. This reasoning is unsupported. The ALJ provides no reason as to why a mild intellectual disability could not

have marked limitations, apparently relying on the word "mild" to the detriment of the actual findings. As such, this was not a valid reason to discount Dr. Trueblood's opinion.

Next, the ALJ found Dr. Trueblood's assessment regarding plaintiff being off task at least 20 percent of the time was inconsistent with plaintiff's activities of daily living and with other medical evidence. Regarding plaintiff's activities of daily living, as discussed in the preceding section, as well as earlier in this decision, none of the activities cited by the ALJ provides any support for the rejection of Dr. Trueblood's medical opinion.

As for inconsistency with other medical evidence, the ALJ relies on the same records used in improperly discounting Gilbert's opinion above. Namely, the ALJ relied on reports from September and October 2021, showing that plaintiff had fair judgment, was cooperative and alert, had normal thought content, goal directed thought processes, average to below average intelligence, intact short-and-long-term memory, and average to above average fund of knowledge. Tr. 1231, 1233. The ALJ also relied on a report from January 2022 in which plaintiff reported an overall stable mood, rarely had panic symptoms, and presented with a brighter mood. Tr. 1248, 1329. And much like the finding related to Gilbert's opinion, these findings are also not inconsistent with Dr. Trueblood's assessment that plaintiff would be off task, as they only tangentially relate to plaintiff's ability to concentrate, persist, or maintain pace.

Because it is not clear from the ALJ's opinion how Dr. Trueblood's assessment is inconsistent with plaintiff plaintiff's intellectual disability being mild, with the medical record, and with plaintiff's activities of daily living, the ALJ's rejection of Gilbert's medical opinion was not supported by substantial evidence.[7]

---

[7] Plaintiff also argues that had that ALJ properly considered Dr. Trueblood's medical opinion, plaintiff would meet or equal Listing 12.05. Pl. Br. 12. Because this Court finds that Dr. Trueblood's medical opinion was improperly discounted, it need not reach plaintiff's argument

**III.    Lay Witness Testimony**

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by plaintiff's mother, a Deschutes County Developmental Disabilities program service coordinator, and three acquaintances by failing to provide reasons germane to the witness. Pl.'s Br. 15-18.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). "Lay witness testimony is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").[8]

Plaintiff's mother provided a third-party report dated July 11, 2020. In it, she stated that plaintiff could not communicate effectively, asthma prevents her from doing housekeeping, that

---

regarding whether or not Dr. Trueblood's medical opinion would establish plaintiff met or equaled a listing.

[8] Citing in the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues that the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 13-14. This Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons."  *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

she uses a cane for stability for at least a year, that it takes longer than normal to do housework, that she cares for two cats, that she experiences numbness in her feet which causes her to stumble and fall, that she experiences numbness in her lower extremities to the point of paralysis, that she cannot stand or walk for any significant length of time due to the numbness, that she does not get adequate sleep due to pain caused by her neuropathy, that she needs reminders to take care of her personal hygiene, that she cannot go out alone, that she has problems with her finances, that she finishes what she starts, and that she follows written instructions fairly well. Tr. 477-89.

Three friends of the plaintiff's mother also provided third-party reports, in which they all produced similar statements. In their reports, they witnessed an incident at church where plaintiff was unable to move for 15 to 30 minutes, that when she could finally move her movements were slow and deliberate, and two people helped her leave the church. Tr. 645-47, 648-49, 650-51.

Lastly, plaintiff's services coordinator provided a report. In the report, she mentioned that plaintiff had told her she experiences tingling and numbness in her lower extremities, that she has pain due to her neuropathy, and that she experienced an instance of paralysis. Tr. 680. She also mentioned that plaintiff was interested in seeking work, that she suffered a knee injury due to a fall, she uses a walking stick, and that any type of physical activity requiring prolonged standing would be difficult for her. Tr. 680-81.

The ALJ found the lay witness testimonies inconsistent in "terms of the severity of those symptoms and limitations. The ALJ also found that the lay witnesses are "are not trained to make exacting observations about the claimant's limitations; further, the degree of limitation noted in these statements and interviews are not supported by other evidence in the record from medical and mental health professionals." Tr. 85. Plaintiff asserts that this does not constitute germane reasons for rejecting the lay witness statements.  This Court agrees in part.

The fact that a lay witness is "not trained to make exacting observations" about a claimant's limitations is not a basis to reject the lay witness's testimony. *See Bruce*, 557 F.3d at 1116 (a lay person, though not a medical or vocational expert, is not disqualified from rendering an opinion as to how claimant's condition affected his ability to work); *Brumbaugh-Sandoval v. Colvin*, No. 1:15-CV-585-EPG, 2016 WL 4434473, at \*14 (E.D. Cal. Aug. 22, 2016) (rejecting lay witness "testimony on the basis that the witness is not trained to make exacting observations regarding medical signs and treatments is improper").

The ALJ also concluded that the law witness statements were not supported by other evidence in the record from medical and mental health professionals. Because the ALJ's rejection of Dr. Lanford's opinion as to Plaintiff's medical limitations was supported by substantial evidence, the ALJ provided germane reasons for rejecting the lay witness testimony to the extent it was inconsistent with Dr. Lanford's assessment of Plaintiff's limitations. However, because the ALJ improperly rejected the opinions of Dr. Trueblood and Gilbert as to plaintiff's mental limitations, the same reasoning does not provide germane reasons for rejecting lay witness testimony on those issues. Accordingly, the ALJ's rejection of plaintiff's lay witness statements was not supported by substantial evidence.

## IV.    Step Five

Finally, plaintiff asserts that the ALJ erred by failing to include limitations from plaintiff's testimony, the lay witnesses' testimonies, and the medical opinions in the proposed hypotheticals to the VE. According to plaintiff, by not including these improperly rejected limitations, the VE's testimony is of no evidentiary value. Pl.'s Br. 18-19.

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [her]

identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R §
416.920(g). In making this determination, the ALJ relies on the Dictionary of Occupational
Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job
information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273,
1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1).

The ALJ relies on the testimony of a vocational expert (VE) to identify specific
occupations that a claimant can perform in light of her RFC. 20 C.F.R § 416.966(e); *Valentine v.
Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). When there is an apparent conflict
between the vocational expert's testimony and the DOT, the ALJ is required to reconcile that
inconsistency by posing questions about the potential conflict. *See Massachi v. Astrue*, 486 F.3d
1149, 1153 (9th Cir. 2007). Nevertheless, if the ALJ fails to ask the vocational expert about the
potential conflict, that "procedural error" may be "harmless" if there is no conflict between the
vocational expert's testimony and the DOT. *Id*. at 1154 n.19.

Plaintiff argues that limitations noted in her testimony, in the lay witness testimonies, and
in the medical opinions should have been present in the hypotheticals proposed to the VE, and
the ALJ erred in his reliance on the VE's testimony because the hypotheticals were incomplete.
Pl.'s Br. 18-19. Plaintiff is correct.

As discussed above, the ALJ failed to provide valid reasons for discounting plaintiff's
subjective symptom testimony as it pertained to her mental health and intellectual disability as
well as the medical opinions provided by Kiley Gilbert and Dr. Trueblood. Because of this
improperly rejected evidence, the resulting hypotheticals proposed to the VE were necessarily
incomplete, and therefore invalid. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988).

V.      **Remedy**

Plaintiff argues that this Court should exercise its discretion to credit-as-true the rejected

evidence and remand for payment of benefits. Pl. Br. 19. This Court disagrees.

A.      **Legal Standard**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d

1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for

additional investigation or explanation, a court has discretion to remand for immediate payment

of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).

The issue turns on the utility of further proceedings. A court may not award benefits punitively

and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by

the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r*

*of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative

proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the

improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand," the district court should remand for payment of benefits.

*Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a

legal error and then reviews the record as a whole to determine whether the record is fully

developed, the record is free from conflicts and ambiguities, and whether there is any useful

purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be resolved does the court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

### B.    Analysis

Here, the ALJ committed harmful error by improperly rejecting plaintiff's subjective symptom testimony as it pertains to her mental health, and improperly rejecting the medical opinions of Kiley Gilbert and Dr. William Trueblood. However, the record is not free from conflicts and ambiguities, and there is a useful purpose in further proceedings.

Specifically, the extent of Plaintiff's mental health limitations is not clear from the record. For example, plaintiff has some daily activities that are not referenced by the ALJ that do support she can concentrate and persist (such as reading and doing puzzles every day, and constantly reminding her daughter, who has ADHD/memory issues of her own, to do things every day). Tr. 130, 473, 504, 536. Plaintiff also has three different function reports that generally conflict with each other that the ALJ does not mention. Tr. 469-76, 499-508, 535-42

As for the medical opinions, Dr. Trueblood's assessment has notes pertaining to plaintiff's ability to concentrate and persist that contradict his finding that plaintiff would be off-task, as well as internal inconsistencies between his first and second assessment that were also unaddressed by the ALJ. Tr. 1155-63, 1180-84. Gilbert provided a single medical record despite seeing plaintiff three times, but there are other therapy records from her treatment center that were also provided at the same time that went unaddressed by the ALJ. Tr. 1248-72. These are all conflicts and ambiguities in the record that must be resolved on remand.

Considering that the ALJ included multiple mental health related limitations in the RFC, it is not clear from this record whether those limitations will be modified on remand after the ALJ reevaluates plaintiff's testimony, the opinions of Gilbert and Trueblood, and the lay witness statements. Moreover, the record as a whole creates serious doubt as to whether the Plaintiff is disabled, particularly given that Plaintiff's physical limitations included in the RFC were supported by substantial evidence. Accordingly, this Court declines to exercise its discretion remand for immediate payment of benefits.

Instead, on remand, the ALJ shall reevaluate plaintiff's subjective symptom testimony and identify specific, clear and convincing reasons as to why her mental health and intellectual disability limitations were discounted or accept them. The ALJ must also reevaluate the medical opinions of Kiley Gilbert and Dr. William Trueblood. On reevaluation of Dr. William Trueblood's opinion, the ALJ must also reassess whether Dr. Trueblood's medical opinion would entitle plaintiff to meet or equal listing 12.05. The ALJ must also reevaluate the lay witness statements, at least as they pertain to Plaintiff's mental health and intellectual disability limitations, and either accept them or provide germane reasons for rejecting them.  Last, the ALJ

must, if necessary, reformulate the RFC, seek further VE testimony at step five, and conduct any other measures deemed appropriate.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this <u>18th</u> day of September, 2024.

ANDREW HALLMAN
United States Magistrate Judge